**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFF TWIDDY, SR., ANTHONY BRUNO and ROBERT POMARO, individuals, on behalf of themselves and others similarly situated, | ) | CASE NO. 5:14CV02053 |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiffs, | ) | |
| | ) | **ORDER AND DECISION** |
| vs. | ) | (Resolving Docs. 104, 119, 122) |
| ALFRED NICKLES BAKERY, INC., | ) | |
| Defendant. | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendant Alfred Nickles Bakery, Inc. ("Nickles"). Doc. 104. Nickles also filed a motion to strike and/or disregard certain declarations offered in support of Plaintiffs' opposition brief to summary judgment. Doc. 119. Plaintiffs Jeff Twiddy, Sr., Anthony Bruno, and Robert Pomaro[1] then filed their own motion to strike and/or disregard certain declarations and exhibits. Doc. 122. The Court finds that genuine issues of material fact exist as to the claims set forth in Plaintiffs' Complaint. As such, for the following reasons, Nickles' motion for summary judgment is DENIED. Nickles' and Plaintiffs' respective motions to strike are DENIED.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs are current or former employees of Nickles, and Plaintiffs have alleged that Nickles violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime. The case

[1] Plaintiffs sought to certify a collective action under 29 U.S.C. §216(b). The class is now composed of 66 plaintiffs. Plaintiffs Twiddy, Bruno, and Pomaro are class representatives.

centers on whether Plaintiffs are engaged in sales as their primary duty.  The parties disagree about the Plaintiffs' responsibilities, but the undisputed facts are as follows:

Nickles bakes, sells, and distributes bread in various states.  It is headquartered in Navarre, Ohio, and has three plants in Navarre and Lima, Ohio and in Martins Ferry, West Virginia.  Nickles also operates 22 branch offices in Ohio, Pennsylvania, and West Virginia.  Within these branches, Nickles has established routes, and the company then assigns its customers to one of these established routes.  Customers include grocery stores, convenience stores, discount retailers, restaurants, drug stores, schools, hospitals, and nursing homes.  Nickles employs branch management, sales personnel, drop drivers, transport drivers, and merchandisers.

The parties agree that the Plaintiffs drive a company truck and deliver and display product to customers, while removing stale product.  They coordinate ordering needs and assess existing stock at each customer location.  They maintain a handheld device that stores product inventory information, which is downloaded at the company facility at the end of each day.  The Plaintiffs work independently and control their own schedule.  Thus, they are free to take their lunch or run errands throughout the day.  Plaintiffs receive a salary and a commission and are subject to at least one collective bargaining agreement.

Plaintiffs filed the underlying complaint alleging violations of the Fair Labor Standards Act.  Specifically, they argue that they are not engaged in sales and/or do not perform sales activity as a primary duty.  Thus, Plaintiffs are seeking overtime pay.  Nickles argues that the Plaintiffs' primary duty is sales, and Plaintiffs are subject to the "outside sales exemption."  Nickles also argues that all or some of the Plaintiffs drive or have driven trucks weighing more than 10,000 pounds, and consequently, the Plaintiffs are subject to the Motor Carrier Act exemption.  Nickles filed a motion for summary judgment, which has been fully briefed and is now ripe for decision.

## II. LEGAL STANDARD OF REVIEW

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* At 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute, and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

## III. LEGAL ANALYSIS

### A. The FLSA and the Outside-Sales-Employee Exemption

#### 1. Law

> Congress enacted the FLSA in 1938 with the goal of "protect[ing] all covered workers from substandard wages and oppressive working hours." Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages.

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) (*citing* 29 U.S.C. §207(a)) [internal citations omitted]. "The overtime compensation requirement does not apply with respect to all employees…the statute exempts workers 'employed…in the capacity of outside salesman.'" *Id.* (*citing* 29 U.S.C. §213(a)(1)).

In the FLSA, Congress did not define the term "outside salesman," but it delegated authority to the Department of Labor to issue regulations to define the term. *Id.* at 2162. The Supreme Court in *Christopher v. SmithKline Beecham Corp* set out the relevant legal background of the outside-sales-employee exemption:

> Three of the DOL's [Department of Labor's] regulations are directly relevant to this case: §§ 541.500, 541.501, and 541.503. We refer to these three regulations as the "general regulation," the "sales regulation," and the "promotion-work regulation," respectively.
>
> The general regulation sets out the definition of the statutory term "employee employed in the capacity of outside salesman." It defines the term to mean "any employee ... [w]hose primary duty is ... making sales within the meaning of [29 U.S.C. § 203(k) ]" and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." §§ 541.500(a)(1)–(2). The referenced statutory provision, 29 U.S.C. § 203(k), states that " '[s]ale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." Thus, under the general regulation, an outside salesman is any employee whose primary duty is making any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.

> The sales regulation restates the statutory definition of sale discussed above and clarifies that “[s]ales within the meaning of [29 U.S.C. § 203(k) ] include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property.” 29 C.F.R. § 541.501(b).
>
> Finally, the promotion-work regulation identifies “[p]romotion work” as “one type of activity often performed by persons who make sales, which may or may not be exempt outside sales work, depending upon the circumstances under which it is performed.” § 541.503(a). Promotion work that is “performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work,” whereas promotion work that is “incidental to sales made, or to be made, by someone else is not exempt outside sales work.” *Ibid*.

*Id*, at 2162-63.

In addition to the regulations identified by the Supreme Court in *Christopher*, two other Department of Labor regulations are relevant in this case. Section 541.700 of the Code of Federal Regulations states:

> [t]o qualify for exemption under this part, an employee's “primary duty” must be the performance of exempt work.... Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). “The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee.” *Id.* at § 541.700(b).

Also relevant to this case is 29 C.F.R. § 541.504, titled “Drivers who sell,” which states:

> (a) Drivers who deliver products and also sell such products may qualify as exempt outside sales employees only if the employee has a primary duty of making sales. In determining the primary duty of drivers who sell, work performed incidental to and in conjunction with the employee's own

> outside sales or solicitations, including loading, driving or delivering products, shall be regarded as exempt outside sales work.
>
> (b) Several factors should be considered in determining if a driver has a primary duty of making sales, including, but not limited to: a comparison of the driver's duties with those of other employees engaged as truck drivers and as salespersons; possession of a selling or solicitor's license when such license is required by law or ordinances; presence or absence of customary or contractual arrangements concerning amounts of products to be delivered; description of the employee's occupation in collective bargaining agreements; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; and proportion of earnings directly attributable to sales.

*Id.* § 541.504(a), (b). "The Supreme Court has also instructed that 'exemptions in the Fair Labor Standards Act are to be narrowly construed against the employers seeking to assert them.'" *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 582 (6th Cir. 2014) (*citing Sandifer v. U.S. Steel Corp.*, —— U.S. ——, 134 S.Ct. 870, 879 n. 7 (2014) (internal quotation marks omitted)).

**2. Application**

This case turns on two questions: 1) do the Plaintiffs makes sales? 2) if so, is making sales their primary duty? The Court finds that there is an issue of material fact as to both questions. Therefore, summary judgment is inappropriate.

As to the question of sales, Nickles has presented evidence through declarations and deposition testimony that the Plaintiffs are required to attend certain sales training, actively work to increase sales through increasing shelf space at each customer's facility, promote Nickles' products, use their sales judgment to alter product mix at a particular store in order to meet customer needs, regularly visit with customer personnel to build good will and increase sales. The Plaintiffs are part of a monthly sales listing, ranking the performance of each person, and the Plaintiffs also receive a commission on sales.

However, Plaintiffs have presented deposition testimony and declarations that deny engaging in sales activities and instead support a finding that the Plaintiffs are only furthering the sales efforts of branch management and other sales personnel. Plaintiffs have presented evidence in which a jury could find that they do not have any meaningful influence with customers. Rather, the customer accounts are secured by branch sales management, and the Plaintiffs are required to adhere strictly to the pre-determined sales agreement or plan-o-gram established between Nickles and the customer. Thus, there remains a genuine issue of material fact as to whether the Plaintiffs engage in sales.

Even if the Court determined that the Plaintiffs are engaged in sales, the Court would then have to determine whether sales is the Plaintiffs' primary duty. Again, there is conflicting testimony in the record. Considering the evidence in a light most favorable to the Plaintiffs, a jury could conclude that sales is not their primary duty.

It appears undisputed that Plaintiffs engage in non-exempt work, such as delivering product and stocking shelves. However, the record is in conflict about the type of sales activity Plaintiffs perform, if any. Even if the Court were to find that the Plaintiffs engage in sales as a matter of law, the Court cannot determine from the record what percentage of their time is engaged in sales and cannot then determine whether sales is their primary duty.

Given all of this, there is a genuine issue of material fact as to whether Plaintiffs are subject to the outside-sales-employee exemption. The Court DENIES Nickles' motion for summary judgment.

**B. FLSA Motor Carrier Act Exemption**

Nickles argues that Plaintiffs are exempt under the Motor Carrier Act ("MCA"), codified in 29 U.S.C. § 213(b)(1). The MCA Exemption is one exception to this general overtime rule set

forth in the FLSA. The MCA Exemption applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). "The purpose of the motor carrier exemption is to avoid subjecting employers to overlapping regulatory regimes." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F.Supp.2d 257, 264 (E.D.N.Y.2012) (*citing Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661, 67 S.Ct. 931 (1947)). "If the Secretary of Transportation is authorized under the [MCA] to set maximum work hours for an employee, then the FLSA's overtime provisions do not apply to that employee." *Id.* "Thus, the effect of the interplay between the FLSA and the MCA ... is to exempt from the FLSA's mandatory overtime coverage employees of motor private carriers transporting property in interstate commerce on public highways when the activities of the employees affect safety of operation." *Veney v. John W. Clarke, Inc.*, 28 F.Supp.3d 435, 441 (D.Md.2014) (*citing Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1106 (4th Cir.1997)).

Congress enacted the Technical Corrections Act ("TCA") in 2008, which amended the scope of the MCA Exemption by providing that overtime compensation would be available to "covered employee[s]" despite the provisions of the MCA Exemption. See SAFETEA—LU Technical Corrections Act of 2008, PL 110–244, June 6, 2008, 122 Stat. 1572. Specifically, the TCA provides that "Section 7 of the [FLSA] ... shall apply to a covered employee notwithstanding [the MCA exemption]." *See id.* at § 306(a). Section 306(c) of the TCA defines the term "covered employee," in relevant part, as an individual—

> (1) who is employed by a motor carrier or motor private carrier ...;
>
> (2) whose work, **in whole or in part,** is defined—
>
> (A) as that of a driver...; and

(B) as affecting the safety of operation of **motor vehicles weighing 10,000 pounds or less** in transportation on public highways in interstate or foreign commerce...; and

(3) **who performs duties on motor vehicles weighing 10,000 pounds or less.**

*Id.* (emphasis added).

While "[n]either the language of the FLSA nor the motor carrier exemption indicates how to categorize individuals who operate both commercial motor vehicles and non-commercial motor vehicles," courts interpreting the TCA have reached different conclusions about the scope of its coverage. *Avery v. Chariots For Hire*, 748 F.Supp.2d 492, 499 (D.Md.2010); s*ee Smith v. Schwan's Home Serv., Inc.*, No. 2:13–CV–00231–JAW, 2014 WL 6679129, at *29 (D.Me. Nov. 25, 2014) (collecting cases and explaining, "[f]ederal courts have taken an inconsistent approach in answering the question of whether the MCA Exemption applies to an employee who drives both exempt and non-exempt vehicles."). The Sixth Circuit Court of Appeals has not addressed the issue of a "mixed fleet" under the TCA. Some district courts have held that "the MCA Exemption still applies so long as the employee spends more than a 'de minimis' amount of time driving a commercial vehicle in interstate commerce." *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 162 F. Supp. 3d 490, 507–10 (W.D.N.C. 2016) (*citing Avery v. Chariots For Hire,* 748 F.Supp.2d 492, 500 (D.Md.2010)).

Plaintiffs note that several other courts, including the only published decision from a Court of Appeals squarely addressing the issue have applied a more expansive reading of FLSA coverage in light of the TCA. Doc. 113 at 33 (*citing Hernandez v. Alpine Logistics, LLC*, No. 08–CV–6254T, 2011 WL 3800031, at *4 (W.D.N.Y. Aug. 29, 2011); *Aikins v. Warrior Energy Servs. Corp.*, No. 6:13–CV–54, 2015 WL 1221255, at *5 (S.D.Tex. Mar. 17, 2015); *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13–CV–6789 CBA LB, 2015 WL 5567073, at *7

(E.D.N.Y. Sept. 21, 2015) ("The majority of courts have held that, under the [TCA], a driver is covered by the FLSA's overtime-wage provisions when he spends part of a week driving a small vehicle and part driving a large vehicle.")).

The Third Circuit Court of Appeals examined the issue and explained:

> [T]he relevant language of the [TCA] is that, as of June 6, 2008, "Section 7 of the [FLSA] ... shall apply to a covered employee notwithstanding section 13(b)(1) of that Act." Corrections Act § 306(a). This is a plain statement that a 'covered employee' is to receive overtime even where section 13(b)(1)—the [MCA] Exemption—would ordinarily create an exemption....Statutory construction points to one conclusion: 'covered employees' are entitled to overtime.

*McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 170 (3d Cir.2015). In *McMaster*, the plaintiff was a driver and guard of commercial armed vehicles, and approximately half of her trips were in vehicles weighing less than 10,000 pounds. *Id.* at 169–70. The Third Circuit explicitly declined to define "in part" as used in the TCA, noting that "[w]hatever 'in part' means, it is certainly satisfied by [plaintiff], who spent 49% of her days on vehicles less than 10,000 pounds." *See id.* at 169–70, n. 4. Other district courts have rejected the "de minimis" standard, noting that "many decisions...instead read section 306 [of the TCA] to afford overtime coverage to employees, notwithstanding the MCA, as long as they perform 'some meaningful work' on vehicles weighing 10,000 pounds or less." *Aikins v. Warrior Energy Servs. Corp.*, No. 6:13–CV–54, 2015 WL 1221255 (S.D.Tex. Mar. 17, 2015).

Like the Third Circuit in *McMaster*, the Court declines now to define "in part" as used in the TCA. Whether the standard is "de minimis" time on smaller vehicles or whether it includes the performance of "some meaningful work," the record is devoid of evidence indicating how much time each Plaintiff spent on a particular type of truck. As such, a material question of fact

remains as to whether any Plaintiff is subject to the MCA Exemption. Nickles' motion for summary judgment is DENIED.

### C. Motions to Strike

Plaintiffs and Nickles have each filed motions to strike certain declarations, deposition testimony, and exhibits submitted in support or opposition to summary judgment. Both sides argue that the other side has violated the discovery plan and submitted evidence outside of the parties' agreement. Since each side appears to have taken liberties by submitting evidence in violation of the agreement, the Court denies both motions.

## III. CONCLUSION

Reviewing the facts in a light most favorable to Plaintiffs, genuine issues of material fact exist as to Plaintiffs' claims under the Fair Labor Standards Act. Therefore, Defendant's motion for summary judgment is DENIED. The two motions to strike filed by Plaintiffs and Defendant, respectively, are DENIED.

IT IS SO ORDERED.

Dated: 03/31/2017

*/s/John R. Adams*
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE